**IN THE UNITED STATES COURT OF APPEALS**

FOR THE FEDERAL CIRCUIT

**In re: Kabir,**

Petitioner.

**No: 26-128**

On Petition for a Writ of Mandamus

from the United States District Court

for the District of New Jersey

(Civil Action No. 2:25-cv-15207 (EP) (JSA))

---

**PETITION FOR PANEL REHEARING**

**(Fed. R. App. P. 40; Fed. Cir. R. 40)**

**I. STATEMENT OF POINTS OVERLOOKED OR MISAPPREHENDED**

**1.** Pursuant to Fed. R. App. P. 40(a)(2), Petitioner respectfully submits that the Court's February 24, 2026 Order misapprehended the core constitutional claim and the inadequacy of post-judgment appeal. Specifically:

  **a.** The Court analyzed the "right to electronic filing" as a mere privilege under Rule 5, overlooking the argument that revoking *all* reliable access to a geographically

distant court (1,000+ miles) creates a **de facto barrier to the courts** under the Fifth Amendment.

b. The Court misapprehended the **adequacy of appeal**, as the financial and procedural "toll" imposed by mandatory paper filing for a distant *pro se* litigant in complex patent litigation is an irreparable, ongoing injury that cannot be "refunded" or remedied after a final judgment.

## II. REHEARING IS WARRANTED TO ADDRESS THE "DEATH KNELL" EFFECT OF GEOGRAPHIC BARRIERS

2.  The Order states that Petitioner has no "indisputable right" to CM/ECF or ADS. However, Petitioner did not assert a right to a *platform*, but a right to **meaningful access** as defined in *Boddie v. Connecticut*, 401 U.S. 371 (1971).

   a. **The 1,000-Mile Paper Barrier.** The Petitioner's office address is in Biloxi, Mississippi. The District of New Jersey sits in Newark. By revoking electronic access, the District Court has not merely changed a "filing preference"; it has imposed a physical and financial blockade. In a high-volume patent case, the cost of overnight commercial delivery, printing thousands of pages of technical exhibits, and the high risk of "mailing delays" resulting in missed jurisdictional deadlines create a structural disadvantage that represented parties do not face.

   b. **Misapprehension of the Constitutional Injury.** When a court order (D.E. 192) makes the cost of litigation "prohibitive" for a specific litigant based on their status and location, it triggers the Fifth Amendment's Equal Protection component. *Bolling*

*v. Sharpe*, 347 U.S. 497 (1954). Rehearing is necessary to determine if a District Court abuses its discretion when it uses Rule 5 to impose a "financial toll" on the right to defend property (patents).

### III. POST-JUDGMENT APPEAL IS INADEQUATE TO REMEDY CONTEMPORANEOUS ECONOMIC DEPRIVATION

3.      The Court's Order suggests that a post-judgment appeal is an adequate remedy. Petitioner respectfully submits that under the second prong of *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367 (2004), an appeal is inadequate if the injury is **irremediable.**

4.      If Petitioner is forced to expend thousands of dollars on courier fees and printing costs—monies that cannot be recovered as "costs" by a *pro se* litigant even if he prevails—the injury is sustained *now*. Furthermore, in patent litigation, time is of the essence. The "mailing lag" inherent in paper filing in a 2026 digital court environment ensures that Petitioner's responses reach the Court days after the Defendants' electronic submissions, creating a permanent "informational asymmetry" that a final appeal cannot fix.

### IV. CLARIFICATION OF THE "BURDEN" ON THE CLERK, DOCKETING HISTORY, AND COMPLIANCE EFFORTS

5.      **The Court's Order appears to have misapprehended the nature of the "burden" referenced by the District Court.** The Order suggests that Petitioner's filings were excessive; however, the existing docket reflects that the submissions at issue were made in response to procedural directives and good-faith efforts to ensure compliance with filing requirements during periods of docketing delay. The District Court's Order (D.E. 192) did

not specify which particular filings constituted "abuse" or provide clear guidance as to what conduct would be deemed improper, while simultaneously cautioning against further submissions. The following clarifications do not introduce new evidence but are drawn from the existing record to assist the Court in understanding the procedural history.

**Rehearing is warranted because a finding of "abuse" that is actually based on compliance efforts cannot serve as the "indisputable" basis for revoking constitutional access to the court**.

**5A. Seven Attempts at Single Opposition.**

The Court's Order (Dkt. 192) misapprehended the nature of Petitioner's filing history. Petitioner did not "burden" the court by choice or through strategic excess. Rather, Petitioner was required to submit **seven iterations** of a single opposition to the Motion to Dismiss as a direct result of:

1. **Conflicting Clerk's Directives:** Petitioner acted at the express, albeit conflicting, telephonic direction of Clerk's Office personnel regarding the appropriate method and format for submission (e.g., paper vs. USB vs. ADS).

2. **Mandatory Compliance with Court Orders:** Several refilings were necessitated by the need to strictly comply with subsequent court orders regarding specific page limits for the briefing.

**5B. Shifting Directives and Lack of Notice.**

1. **Paper Filings:** Clerk's Office staff specifically instructed Petitioner to file in paper. Petitioner complied twice, only to later be told that paper filing was prohibited for

4

    ADS users—a rule not clearly communicated to Petitioner at the time of the instruction. In addition, none of these paper submissions were docketed and are still missing from the docket.

2. **USB Submissions:** Clerk's Office staff requested that Petitioner submit filings via USB drive. Petitioner complied, only to have the submission rejected because ADS users were apparently barred from using physical media.

3. **Verifiable Evidence:** Petitioner possesses **audio recordings** of the telephone directives from the Clerk's Office staff. These recordings confirm that Petitioner was acting under the direct guidance of court personnel, not engaging in "gamesmanship."

**5C. Clarification about Human Factor Behind the ADS Docketing Anomaly**

The Court's Order appears to have accepted the District Court's characterization that Petitioner "abused" the ADS system. Respectfully, the docket history reflects that Petitioner's opposition briefs to the motions to dismiss filed by Thoughti and WebMD were successfully docketed on multiple occasions beginning November 24, 2025. To the extent technical issues arose, they pertained to exhibits processing rather than to the briefing itself. The record, therefore, reflects repeated good-faith efforts to comply with filing requirements during periods of submission and docketing difficulty, rather than misuse of the ADS system.

1. **ECF 122 – WebMD Opposition (Filed November 24, 2025)**

Petitioner submitted ECF 122, WebMD's opposition to the Motion to Dismiss, on November 24, 2025. That filing included seventeen (17) exhibits and was successfully uploaded to the docket on December 5, 2025.

The twelve-day delay between submission and docketing prompted Petitioner—based on Clerk's Office guidance—to re-submit the opposition electronically multiple times to ensure compliance and avoid default. These re-submissions were not duplicative filings for strategic advantage but compliance efforts during a period when the original submission had not yet appeared on the public docket.

Notably, although the November 24 WebMD opposition was eventually docketed, the Thoughti opposition submitted the same day—with substantially overlapping exhibits—was not uploaded at that time.

2. **ECF 140 – December 7, 2025, Submission**

ECF 140, submitted on December 7, 2025, was docketed on December 10, 2025. However, only a portion of the exhibits were initially uploaded, despite the fact that related exhibits had already been successfully docketed on December 5.

When viewed collectively, the record demonstrates that the exhibits were capable of being docketed and did not exceed technical limitations.

3. **January 2026 Filings – Differential Docketing**

On January 8, 2026, Petitioner filed ECF 159 (opposition to Thoughti), which referenced exhibits already available on the docket and added three additional

exhibits, which the court said could not be docketed earlier but had no problem this time. That filing was entered on January 11, 2026.

On the same day, Petitioner filed a WebMD opposition containing only three exhibits, which were critical but, for unforeseen reasons, were not docketed earlier. That submission was not docketed until January 16, 2026 (ECF 169) after WebMD filed correspondence (ECF 166, January 15, 2026) referencing the pending opposition.

The temporal proximity between defense correspondence and subsequent docketing of Petitioner's filing raises questions as to whether the delay reflected system limitations or administrative processing timing rather than any defect in Petitioner's submission.

4. **Procedural Asymmetry Caused by Docketing Delays**

The record reflects a critical inconsistency in the District Court's processing of Petitioner's submissions that contradicts the finding of "system abuse." On the same day, on January 8, 2026, Petitioner submitted two filings (ECF 159 and ECF 169) in substantially identical formats via the ADS system, containing nearly identical exhibits. Despite these similarities:

   a. **Disparate Processing:** ECF 159 was successfully docketed using the ADS electronic filings on January 11, 2026, while ECF 169 was processed only through the physical courtesy paper copies.

   b. **Delayed Entry:** The record further reflects that ECF No. 169 was withheld from the public record for approximately six additional days, and was

7

    docketed on January 16, 2026. In total, nine days elapsed from the date of the initial ADS filing before the document became visible, a transition that occurred only after a letter was submitted by the Defendant. This delay created a significant **procedural asymmetry**, as it hindered timely access to the record and disrupted the equitable progression of the litigation.

c. **Strategic Advantage for Defendants:** Under standard rules, the docketing of a filing on the day of submission triggers the procedural clock for responsive briefings. However, because Petitioner lacks direct CM/ECF access, the nine-day administrative delay in docketing functioned as an informal extension for the Defendants. When combined with the ongoing docketing failures beginning November 20, 2025, the Defendants have effectively received nearly **50 additional days** to respond—a strategic advantage directly resulting from Petitioner's lack of CM/ECF docketing access. Rehearing is warranted because the revocation of CM/ECF/ADS access does not merely create an "inconvenience"; it actively tilts the scales of justice by granting the Defendants additional time and infrastructure that are denied to the Petitioner.

d. Petitioner acknowledges that at the time of these filings, the nuanced procedural distinction regarding courtesy copies—specifically, that they may be permitted for represented parties but restricted for *pro se* litigants with ADS status—may not have been fully understood. However, these actions were not an attempt to circumvent rules or "burden" the Court. Rather, they

      represent a diligent, good-faith effort to ensure that technical filings reached the Court through every available channel provided by the Clerk's Office.

    e. Rehearing is warranted because the record demonstrates that Petitioner was attempting to navigate an inconsistent administrative environment, and a misunderstanding of a technical rule regarding courtesy copies does not constitute the "clear and indisputable" evidence of abuse required to justify the revocation of constitutional access.

5. **Intentional vs. Systemic Irregularities.** Petitioner cannot determine whether these "human factors" and docketing anomalies were intentional or the result of systemic error. However, when these irregularities occur in a "home court" venue 1,000 miles from Petitioner's residence, they create a functional barrier that effectively terminates Petitioner's ability to defend his intellectual property. Rehearing is warranted to ensure that a good-faith attempt to overcome technical and clerical hurdles is not mischaracterized as "abuse" to justify the revocation of constitutional access.

## V. RELEVANCE TO THE MANDAMUS STANDARD

**6.** These docketing events are relevant not to relitigate factual disputes, but to clarify that the district court's finding of "abuse" was predicated on repeated compliance attempts during periods of docketing delay and submission uncertainty.

**7.** The mandamus petition did not seek immunity from filing rules. It sought review of whether revocation of electronic access—based on a record reflecting compliance

attempts during docketing irregularities—creates structural impairment of meaningful participation.

8.     If the panel's denial rested on an understanding that Petitioner engaged in deliberate misuse of filing mechanisms, rehearing is respectfully warranted to clarify the docket history.

## VI. REHEARING IS NECESSARY TO CORRECT THE FACTUAL PREDICATE

9.     The District Court's finding of "abuse" (D.E. 192) was the sole basis for revoking Petitioner's ADS access. Because that finding was based on Petitioner's good-faith attempts to follow the Clerk's own instructions, the revocation is an abuse of discretion.

10.    Rehearing is warranted to clarify that a litigant cannot be stripped of constitutional access for complying with the court's own shifting procedural directives.

## VII. LEGALITY AND ADMISSIBILITY OF SUPPLEMENTAL EVIDENCE

11.    Petitioner clarifies that the audio recordings of the Clerk's Office directives were made in a **"one-party consent" jurisdiction** (Mississippi/Alabama), where such recordings are lawful under state statute (e.g., Miss. Code Ann. § 41-29-531(e); Ala. Code § 13A-11-30 and § 13A-11-31). As these recordings provide direct, contemporaneous evidence that the "burden" on the court was caused by Petitioner's attempts to comply with conflicting staff instructions, they are highly relevant to correcting the factual misapprehension in the Court's Order. Petitioner stands ready to provide these recordings or a certified transcript thereof should the Court request them or refer this matter for an evidentiary hearing to resolve the factual dispute regarding Petitioner's conduct.

**VIII. STATEMENT OF GOOD FAITH, VENUE CHALLENGE, AND OBJECTIVE**

**12.** This mandamus petition is, at its core, a **venue challenge**. Under the framework of *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017), this action was moved to the District of New Jersey—the Defendants' "home court." Petitioner asserts that the subsequent revocation of electronic access, combined with the complete blockade of filings, combined with the 1,000-mile geographic distance, has transformed that "home court advantage" into a dispositive barrier. The current procedural posture allows the Defendants to utilize the full infrastructure of the court, while Petitioner is relegated to a failing paper-filing system that prevents him from defending his intellectual property on equal terms.

**13.** Petitioner has devoted over two decades to the development of healthcare technologies intended to resolve global healthcare crises. As an individual on the autism spectrum, Petitioner experiences an inherent commitment to '**never give up,**' which makes it impossible to abandon these claims before achieving an equal opportunity to be heard. Petitioner respectfully offers a **sincere apology** to the Court in advance should his persistence be misperceived as a lack of respect; it is, instead, a necessity of conscience.

**14.** To abandon these efforts now, after 25 years of development, without having been heard on the merits, would be a source of lifelong regret. Petitioner's objective is not to burden the Court, but to ensure that the functional barriers identified in this Petition—geographic, financial, and procedural—do not result in the summary deprivation of his intellectual property rights.

**15.** Petitioner respectfully provides notice that he preserves all rights to seek further appellate review, including by the **Supreme Court of the United States** if necessary. However, he submits this Petition for Rehearing in a dedicated, good-faith effort to resolve these critical constitutional misapprehensions within the existing framework of this Court.

## IX. CONCLUSION

**16.** The question is not whether there is a "right to software," but whether there is a right to be free from **unreasonable financial, geographic barriers, and procedural asymmetry** to justice. Because the Order did not address the interplay between the 1,000-mile distance, the cost of paper filing, procedural asymmetry, and the Fifth Amendment, Petitioner respectfully requests that the panel grant rehearing.

**Respectfully submitted,**

*/s/ Azad Kabir*

**/s/ Azad Kabir**

Azad Kabir, M.D., M.S.P.H.

Petitioner, Pro Se

1120 Beach Blvd

Biloxi, MS 39530

Email: azad.kabir@ddxrx.net; Tel: (228) 342-6278

Date: **February 25, 2026**

**CERTIFICATE OF SERVICE**

*(Fed. R. App. P. 21; Fed. Cir. R. 21)*

I, **Azad Alamgir Kabir, M.D., M.S.P.H.**, Petitioner proceeding pro se, hereby certify on **February 25, 2026**, that service of the foregoing **Petition for Panel Rehearing** was made as follows:

**1. Service on the District Court Judge**

Pursuant to Federal Rule of Appellate Procedure 21(a)(1), service on the Honorable Evelyn Padin, United States District Judge for the District of New Jersey, is ordinarily required for notice purposes. In light of D.E. 192, which restricts email communications and references potential sanctions, and given that prior service communications directed to chambers were characterized as ex parte, Petitioner has effected service by Federal Express certified mail addressed to the Clerk's Office of the United States District Court for the District of New Jersey for proper routing and docketing in accordance with applicable procedures.

Petitioner submits this explanation solely to preserve the record and does not intend to waive compliance with Rule 21(a)(1) should the Court direct an alternative method of service.

**2. Service on All Parties to the District Court Proceeding**

Pursuant to Federal Rule of Appellate Procedure 21(a)(1) and Federal Rule of Appellate Procedure 25(c), a copy of the foregoing **Petition for Panel Rehearing** was served by electronic mail on all counsel of record for the parties in the underlying district court action.

**3. Method of Service**

All service described above, where effected, was completed as follows: service on the Honorable Evelyn Padin was made by Federal Express overnight delivery addressed to the Clerk's Office of the United States District Court for the District of New Jersey for proper routing, and service on all other parties was completed by electronic mail, a permitted method of service under Federal Rule of Appellate Procedure 25(c).

I declare under penalty of perjury that the foregoing is true and correct.

Date: **February 25, 2026**

/s/ **Azad Kabir, M.D., M.S.P.H.**

Azad Kabir, M.D., M.S.P.H.

Petitioner, Pro Se