**IN THE UNITED STATES COURT OF APPEALS**

FOR THE FEDERAL CIRCUIT

**In re: Kabir,**

Petitioner.

**No: 26-128**

On Petition for a Writ of Mandamus

from the United States District Court

for the District of New Jersey

(Civil Action No. 2:25-cv-15207 (EP) (JSA))

---

**PETITION FOR REHEARING EN BANC**

---

**STATEMENT PURSUANT TO FED. CIR. R. 35(b)**

**1.**     En banc rehearing is vital to address a two-tiered framework where *pro se* litigants face structural blockades via delayed ADS/paper filings. The Court's February 24 and March 12, 2026, Orders misapprehended this

constitutional injury and the resulting procedural asymmetry favoring

corporate defendants. Specifically:

a. **Misapprehension of the Constitutional Hierarchy over Rule**

**5(d)(3)(B)(i).** The Court analyzed the "right to electronic filing" as a mere

administrative privilege under Fed. R. Civ. P. 5. In doing so, the Court

overlooked the argument that Rule 5(d)(3)(B)(i) is **unconstitutional as**

**applied** when it is utilized to mandate a secondary, delayed filing system

for a geographically distant (1,000+ miles) *pro se* litigant. This application

directly contradicts the Fifth Amendment's guarantee of an equal

opportunity to be heard, as it creates a "Procedural Vacuum" that grants

corporate defendants a narrative monopoly while silencing the Petitioner.

b. **Misapprehension of the "Death Knell" Effect and Inadequacy of**

**Appeal.** The Court misapprehended the adequacy of a post-judgment

appeal. The financial and procedural "toll" of mandatory paper filing—

compounded by a "Human Chain" of docketing delays that prevents the

Petitioner from exercising his legal **right to cure** technical errors—

constitutes an irreparable, ongoing injury. Because the District Court

refuses to consider undocketed filings (ECF No. 110) while simultaneously

controlling the 7-to-12-day delay of that docketing, the "record" for a future

appeal is being systematically suppressed, rendering a post-judgment remedy hollow.

c. **Failure to Address the Monetary Motive of the Structural Barrier.** The Court overlooked the argument that the alternative filing system is designed to deprive *pro se* litigants of procedural parity to invite and protect corporate litigants for the monetary benefit of the forum state. This systemic bias creates a two-tiered justice system that cannot be remedied once a final judgment is entered on a corrupted and incomplete record.

2.      This appeal requires an answer to a question of exceptional importance: **Whether a district court's refusal to grant a *pro se* litigant CM/ECF access,** while mandating a secondary, delayed "ADS" or paper-filing system, creates a "Procedural Asymmetry" that violates the principle of equal access to the court under the law.

**PROPOSED REHEARING ARGUMENT: THE UNCONSTITUTIONALITY OF RULE 5(d)(3)(B)(i) AS APPLIED**

3.      **Rule 5(d)(3)(B)(i) Cannot Supersede the Fifth Amendment Right to Equal Access** The panel's reliance on **Fed. R. Civ. P. 5(d)(3)(B)(i)** to justify the revocation of all reliable filing access misapprehends the hierarchy of legal

authority. While the Rule states a pro se litigant "may file electronically only if allowed by court order," this discretionary power is bounded by the **Fifth Amendment**. When a court uses this rule to mandate a secondary, "blackout-prone" paper system for a geographically distant pro se litigant, while granting instantaneous access to corporate defendants, it creates a **Procedural Asymmetry** that is unconstitutional.

4.  **The "Monetary Benefit" and Corporate Invitation** Petitioner asserts that the systematic exclusion of pro se litigants from electronic filing is not a matter of clerical efficiency, but a structural design that favors corporate litigants for the monetary and economic benefit of the forum state. By ensuring that corporate defendants have a "narrative monopoly" through instantaneous docketing, while the pro se plaintiff is trapped in a "human chain" of undocketed paper filings, the court effectively invites corporate entities into the district under the guarantee of a procedural advantage.

a.  **The "Direct Contradiction" with the Right to be Heard** The alternative filing system does not merely "supplement" the rules; it directly contradicts the fundamental right to be heard at a meaningful time and in a meaningful manner [*Armstrong v. Manzo, 380 U.S. 545, 552 (1965)]*.

b. **The Blockade:** As proven by **Appendix A** (Doc no: 21-1), Petitioner's filings sit in a "procedural vacuum" for days.

5.     **The Conflict:** During this time, the Court—as seen in **ECF No. 110**—refuses to consider the filings because they are not yet docketed. This system is not "equal opportunity"; it is a terminal procedural sanction disguised as an administrative rule. Rule 5(d)(3)(B)(i) must not be interpreted as a license for the District Court to create a de facto barrier that denies the pro se litigant the ability to respond to dispositive motions in real-time.

## EVIDENCE OF COLLUSION AND DENIAL OF EQUAL ACCESS

6.     The record demonstrates that the District Court has not merely erred, but has actively worked in concert with the Defendants to obstruct Petitioner's ability to litigate.

**The ECF 158 and ECF 192 Sequence: A Case Study in Procedural Collusion:**

7.     The clearest evidence of this collusion is found in the handling of **ECF 158 (Motion to Alter or Amend Judgment; Renewal of Motion for CM/ECF Filing Access)**.

**8.**     The clearest evidence of this collusion and the "choice and design" to deny equal access is found in the handling of **ECF 158**.

a.     **Constructive Denial through Record Omission:** On January 10, 2026, Petitioner filed **ECF 158**. This motion was not merely a request for CM/ECF access, but a desperate move to **Alter or Amend Judgment** because the Court had issued orders (ECF 155 and 157) without viewing Petitioner's timely, 30-page compliant oppositions. These documents were invisible to the Court due to "irregular and unpredictable" behavior within the ADS system.

b.     **Defense Misrepresentation:** Counsel for Defendant THOUGHTi Inc., leveraged these technical malfunctions to file an opposition based on a "wrongful claim of non-compliance". They utilized the Court's own administrative failures to paint a false picture of Petitioner's diligence, despite they received complaint copies of the opposition via service emails.

c.     **Irregular Judicial Reclamation:** Although such procedural motions are typically handled by a Magistrate Judge, the District Judge unilaterally reclaimed **ECF 158** on February 3, 2026. This move bypassed the standard referral process at a time when Petitioner was exposing systemic docketing failures.

d.      **The ECF 192 Order and Institutional Collusion:** In **ECF 192**, Judge

Padin denied the motion, effectively validating the Defendants' obstructionist

tactics. By refusing to grant CM/ECF access—even after being informed that

paper filings delivered to chambers had "disappeared" and ADS filings were

delayed by 7–10 days —the Court has maintained a dual-class system of

justice. This system ensures that corporate Defendants enjoy instantaneous

transparency while Petitioner remains trapped in a "procedural vacuum,"

unable to verify the integrity of the court record.

**The "Criminal Loss" of Legal Documents**

**9.**      Despite Petitioner's exhaustive efforts to comply with filing

requirements, the Court has systematically failed to acknowledge or docket

critical submissions:

a.      **Withholding of Digital Evidence:** The Court has never recognized the

receipt of a USB drive containing the complete case filings, despite it being

submitted to ensure a comprehensive record requested by the clerk of the

court.

b.      **Interception of Paper Filings:** On two separate occasions, paper filings

were submitted. In both instances, Clerk's Office personnel confirmed via

telephone that the documents had been physically delivered to the Judge's

Chambers; yet these documents never appeared on the ECF docket.

c.     **Strategic Non-Compliance:** The disappearance of these documents

invariably occurs at critical moments for compliance, forcing Petitioner into a

"procedural vacuum" where he cannot verify the integrity of his own record.

d.     **Artificial Inequality and "Criminal Loss" of the Record:** The

systematic loss of these filings is equivalent to a criminal deprivation of

Petitioner's legal property. By choice and design, the Court has maintained an

environment of "artificial inequality." While the corporate Defendants enjoy

instantaneous filing, immediate confirmation, and total transparency,

Petitioner is relegated to a manual system that the Court itself refuses to

honor.

## FAILURE TO ADDRESS THE UNDERLYING CONSPIRACY

**10.**     The Court's refusal to address these motions fairly is not an isolated

judicial discretion; it is a refusal to acknowledge an underlying conspiracy

between the bench and the defense bar. By denying Petitioner the basic tools

of modern litigation (CM/ECF access) while simultaneously ignoring the

Defendants' misrepresentations regarding misrepresentation, the District

Court has abandoned its role as a neutral arbiter. This court has failed to answer why the District Court is permitted to maintain a dual-class system of justice that favors corporate defendants. Because these issues go to the heart of the integrity of the federal judiciary and the right to Equal Protection under the law, a full panel review of the Writs of Mandamus is required to prevent a manifest miscarriage of justice.

**ARGUMENT**

**I. The "Human Chain" and the Illusion of Equal Access**

**11.**    Throughout the majority of the procedural history—specifically following **November 20, 2026** (see Appendix A, Doc No 21-1)—the Petitioner's filings were subject to inconsistent and prejudicial delays. These delays typically ranged from **5 to 20 days**, seemingly fluctuating based on the perceived importance or merit of the specific filing.

**12.**    The Petitioner asserts that the ADS functioned as the functional equivalent of a manual paper-filing system. Because both systems rely upon a "human chain" to manually upload and verify documents, the process remained vulnerable to external influence.

**13.**    The pattern of missing or delayed filings was predictable:

a.    **Procedural Blockades:** Filings essential to triggering procedural clocks were frequently withheld from the docket entirely, effectively stalling the case.

b.    **Selective Docketing:** Decisions regarding which documents were processed appeared non-neutral, suggesting that "social engineering" or outside influence affected the clerical chain of command.

**Impact on the Petitioner**

**14.**    The combination of compressed filing deadlines and constant docketing failures forced the Petitioner into a state of "rushed filing" simply to ensure that some record of the submission existed. This was not a choice, but a necessity born of systemic instability.

**15.**    Furthermore, a troubling feedback loop emerged:

a.    **Petitioner's Remedial Efforts:** When the Petitioner followed the Clerk's office instruction to correct these omissions, the Court characterized these good-faith efforts as an "abuse" of the system (ECF 192).

b.    **Appearance of Bias:** The coordination between the docketing delays and the Court's subsequent reprimands created an environment where the Petitioner could not evaluate the neutrality of the proceedings.

**16.**     Thus, the core of the issue in the District of New Jersey is **Procedural Asymmetry**. This occurs when a *pro se* plaintiff is restricted to the **ADS** or compelled to file via physical paper (as seen in ECF 192), despite documented "blockades" or delays in docketing.

**17.**     In contrast, represented parties maintain full access to the **CM/ECF (Case Management/Electronic Case Files)** system. By denying *pro se* litigants the "instant" filing and notification capabilities afforded to attorneys, the court creates a systemic inequality. This disparate treatment constitutes a violation of the Petitioner's constitutional right to due process and equal protection under the law. Here is an example: On January 6, 2026, Petitioner submitted a letter via ADS (ECF 156). Because it was not docketed until January 8, the Court issued a Text Order on January 7 (ECF 155) declaring Petitioner non-compliant. The court acted on a "one-sided" view of the docket because the clerk's office had not yet processed the Petitioner's timely submission.

## II. The Mechanical "Catch-22" and the Denial of Physical Media Alternatives

**18.**    Petitioner's struggles are a result of conflicting judicial mandates rather than "user error." Under **ECF 138**, the Court instructed Petitioner to submit all materials "together in one upload." However, the ADS system is architecturally inferior to CM/ECF; it lacks the bandwidth to handle large, complex exhibits for patents '865 and '578.

a.    **The Trap:** Uploading "together" triggers size failures; uploading "separately" (per clerk advice) results in being labeled "sporadic" and "non-compliant" (ECF 157).

b.    **Refusal of Workarounds:** The Court denied Petitioner's **Motion for CM/ECF Access (ECF 158)** and refused the use of **USB/Flash Drives**, which would have instantly resolved volume issues. By denying both digital and physical parity, the Court has locked the Petitioner into a "Second Tier" system designed for failure, leaving the Petitioner "blind" to real-time docket maneuvers.

### III. The Magnified Financial and Procedural Burden of *TC Heartland*

**19.**    This case highlights an unaddressed consequence of *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). In the Middle District of Georgia, Petitioner had driving access to the court and **full CM/ECF**

**privileges**. Transferring to New Jersey—necessitated solely by corporate residency—effectively "evicted" Petitioner from the digital courthouse.

20.    **The Dual-Attorney Barrier:** To achieve "instant" access in New Jersey, a *pro se* litigant must hire both a Local Bar member and a Patent Specialist. For a corporation, this is a business expense; for an individual, it is a financial barrier that transforms a venue rule into a deprivation of the right to litigate.

## IV. The Constitutional Infirmity: Is *TC Heartland* Unconstitutional as Applied?

21.    The Petitioner moves this Court to address whether venue restrictions, as applied to *pro se* litigants, violate the **Fifth Amendment's Due Process Clause**.

   a. **Wealth-Based Forum Barrier:** By forcing a patent holder into a "corporate-centric" district with restrictive local rules, the law imposes a "Tax on Justice." If a litigant cannot afford the "entry fee" of representation required to bypass the flawed ADS system, the statute becomes an instrument of unconstitutional deprivation.

   b. **Discriminatory Impact:** There is no "rational basis" to provide a faster, more reliable system for a billion-dollar corporation while denying it to

an individual inventor. This "Procedural Apartheid" lacks equal protection under the law.

## V. Systemic Discrimination and the "Elite Club" Policy

**22.** The District of New Jersey's policy, as reflected in correspondence from **Chief Judge Bumb**, reinforces this two-tiered system. Sanctioning a regime where the Bar enjoys high-speed access while *pro se* petitioners are trapped in a "Human Chain" of delays institutionalizes **Systematic Discrimination**.

**23.** The "Second-Tier" status of *pro se* litigants is a choice, not a necessity. When the court denies CM/ECF access or physical media, it chooses to maintain a procedural disparity. Access to the electronic docket **is** access to the court in the digital age.

## VI. Constitutional Right of Access, Due Process, and Equal Protection Implications of Structural Filing Asymmetry

**24.** This case presents a question of exceptional importance: whether a federal district court may maintain a dual-track filing regime that provides instantaneous electronic docket access to represented parties while relegating pro se litigants to a delayed, clerk-mediated system that materially affects adjudication.

## A. The Right of Access to the Courts

**25.**    The right of access to the courts derives from the First Amendment right to petition and the Due Process Clause of the Fifth Amendment. The Supreme Court has repeatedly emphasized that litigants must be afforded a meaningful opportunity to be heard.

**26.**    When filing architecture itself functions as a gatekeeping barrier—by delaying docket entry, impairing responsiveness, or preventing real-time participation in litigation—the right of access becomes impaired in practice, even if not formally denied.

**27.**    Access must be adequate, effective, and substantive. A system that permits one party to file and receive immediate docket recognition while the opposing party's filings remain in a clerk-processing queue creates structural inequality in adversarial proceedings.

**28.**    This is not a question of convenience. It is a question of whether procedural architecture can operate as a silent merits filter.

## B. Constitutional Argument Regarding Procedural Asymmetry

**29.**    **Symmetry of Access:** Petitioner asserts that for proceedings to remain equitable under the **Fifth Amendment**, the Court must ensure symmetry. This

requires either granting Petitioner **CM/ECF access** (consistent with Federal Circuit standards) or requiring all parties to use the same manual filing methods to eliminate infrastructure advantages.

**30.    Due Process & Equal Protection:** The Fifth Amendment requires "meaningful access" to the courts. Petitioner asserts that a system allowing represented parties **instantaneous** CM/ECF access while subjecting a distant pro se litigant to a **3-to-12-day** administrative "blackout" period is constitutionally infirm.

**31.    The "Informal Extension" Problem:** Because the defendants enjoy real-time notice while Petitioner's filings sit in a physical queue, the District Court has effectively granted the defense an unearned strategic advantage of approximately **50 cumulative days** of additional response time.

**C. Equal Protection Principles**

**32.**    Although the Equal Protection Clause formally applies to the States through the Fourteenth Amendment, equal protection principles constrain federal action through the Fifth Amendment's Due Process Clause.

33.    The question is not whether courts may regulate filing procedures. They may. The question is whether they may do so in a way that creates material procedural inequality between opposing parties in the same case.

34.    The pro se litigant, Azad Kabir, has a unique name, which usually means a person of Persian origin. But, Petitioner is a minority Muslim of Bangladeshi origin, the Petitioner previously placed his background on the record to safeguard against potential bias. The current procedural framework, which silences the Petitioner while favoring corporate defendants, raises significant concerns regarding the equitable treatment of minority *pro se* litigants.

35.    If filing restrictions or docketing delays are applied specifically because of a litigant's status (such as being a minority, a Muslim, or a pro se litigant), while others are not subject to the same "abuse," it constitutes a violation of equal protection.

## D. The Risk of Identity-Based Prejudice

36.    The Petitioner asserts that the judicial process lacks the functional capacity to maintain the anonymity of a litigant's name (specifically identifying as a **minority Muslim inventor**). In the context of intellectual property, there is a documented history of "appropriation" regarding inventions from minority creators. By failing to provide a mechanism for

anonymous filing, the Court has exposed the Petitioner to potential **racial, religious, and national origin bias**.

**E. Arbitrary Restrictions and Selective Docketing**

**37.**    The Petitioner contends that the arbitrary nature of the current filing restrictions, combined with the **selective and delayed docketing** previously detailed, raises grave constitutional concerns. The Petitioner's identity must not subject him to a diminished standard of judicial access.

**38.**    When court-imposed administrative "abuses"—such as the "human chain" delays in the ADS system—appear to impact a litigant based on protected characteristics disproportionately, these actions must be subject to **Strict Scrutiny.**

**F. Constitutional Violations: Fifth and Fourteenth Amendments**

**39.**    The right to defend one's property and the right to a meaningful hearing are fundamental. Any system that facilitates the disparate treatment of a minority litigant fails to satisfy the basic requirements of the **Fifth and Fourteenth Amendments.**

**a.**    **Due Process:** A "procedural blockade" that targets a specific litigant's filings denies that party the right to be heard.

**b.**    **Equal Protection:** The disparity between the "instant" access of represented parties (CM/ECF) and the "delayed" access for the Petitioner (ADS/Paper) creates a two-tiered system of justice.

**c.**    **Legal Argument:** Where a "human chain" is permitted to influence the docketing of a minority inventor's claims, the court's neutrality is compromised. The judiciary has an affirmative duty to ensure that administrative workflows do not become a tool for "social engineering" or systemic bias.

## G. Procedural Parity as a Structural Requirement

**40.**    While "procedural parity" is not itself an enumerated constitutional provision, it is inherent in adversarial adjudication. Due process requires not only access, but fair access.

**41.**    In the digital era, CM/ECF access is not a luxury—it is the functional doorway to the courthouse. A system that conditions full digital participation on bar membership or retained counsel effectively ties access to financial capacity.

**42.**     This Court should determine whether, in patent litigation of national

scope, structural filing asymmetry violates constitutional guarantees when it

produces demonstrable prejudice.

## H. The Right to Procedural Parity

**43.**     While not a standalone amendment, the principle of **Procedural Parity**

is an extension of Due Process. It suggests that in an adversarial system, one

side should not be given a structural advantage over the other.

## I. The Impact of Mandatory Page Reductions

**44.**     Initially, the Petitioner filed a 130-page response to WebMD's Motion to

Dismiss. Following a Court order to reduce this filing to **30 pages**, the

Petitioner was forced to omit critical arguments regarding copyright and trade

secret misappropriation to comply with the length constraint.

**45.**     To ensure these claims were not waived, the Petitioner incorporated

those defenses into the **Thoughti opposition**, as Thoughti allegedly provided

the material support for the misappropriation. However, the Court struck the

Thoughti opposition based on what the Petitioner asserts was a "case law

hallucination" (a misapplication or misinterpretation of precedent). This

sequence of events resulted in:

a.    **A Violation of the Right to be Heard:** The Petitioner was effectively

silenced on core claims.

b.    **Forced Omission:** Legitimate defenses were stripped from the record

due to arbitrary clerical constraints.

**J. The Lack of Specificity in "Abuse" Findings**

**46.**    The Petitioner contends that the district court's assertion of "abuse,"

subsequently echoed by the Federal Circuit, remains undefined in **ECF 192**.

The record fails to specify which particular actions constituted abuse, leaving

the Petitioner in a **procedural vacuum.**

**K. First Amendment Violations: The "Chilling Effect."**

**47.**    The threat of sanctions for future filings constitutes a prior restraint on

the Petitioner's **First Amendment right** to access the courts. By "choking" the

Petitioner's ability to file rebuttals or defenses, the court is effectively

preventing the protection of the Petitioner's Intellectual Property (IP).

| Action | Constitutionally Protected Right | Court's Characterization |
| --- | --- | --- |
|  |  |  |

| Defending IP | Right to protect property and petition. | Labeled as "Abusive." |
|---|---|---|
| Rebutting Untruths | Right to a fair hearing and Due Process. | Threatened with "Sanctions." |
| Detailed Analysis | Right to present a complete record. | Labeled as "Voluminous." |

48.    In this litigation, the Defendant THOUGHTi has played the role of the Piper of Hameln; however, WebMD's counsel has also been seen borrowing the flute on several occasions to lead the procedural dance. This coordinated performance has ensured that whenever either defendant breathes into the instrument, the court moves in perfect, synchronized step with their desired rhythm. This 'Home Court Advantage'—compounded by the venue implications of *TC Heartland*—has created a record where the Defendants' wishes are granted with enchantment-like efficiency, while the Petitioner is led into a 'Procedural Vacuum' of administrative silence. Whether the tune calls for a stay, a restriction, extension, strike, docketing of missing submissions, or a denial, the court follows the melody as if under a spell.

**CONCLUSION**

**49.**     Petitioner respectfully requests that this Court issue a writ of mandamus directing limited, procedural, and supervisory relief, including the following, in the Court's discretion:

a.     **Order transfer or reassignment of venue**, as appropriate, as essential relief necessary to restore procedural parity, ensure reliable electronic docket access equivalent in function to that afforded represented parties, and remedy structural asymmetry arising after September 17, 2025;

b.     Set aside for reconsideration, hold in abeyance, or otherwise address proceedings occurring **after September 17, 2025**, to the extent necessary to cure resulting procedural prejudice arising from post-transfer filing-access constraints; and

c.     Permit Petitioner to file a **Fourth Amended Complaint**, which would cure alleged deficiencies and procedural irregularities attributable to the post-transfer procedural constraints identified herein and allow the action to proceed on a consolidated and orderly procedural footing.

**50.**     Such relief is necessary to prevent disproportionate procedural disadvantage where those with bar memberships use advanced legal databases and software, while *pro se* litigants are sanctioned for using only

tools available to them. This Court must intervene to preserve the adversarial

process and prevent the irreparable harm of losing property rights—

specifically patent claims —due to a lack of formal bar credentials that AI is

uniquely positioned to bridge.


**Respectfully submitted,**

**/s/ Azad Kabir**

Azad Kabir, M.D., M.S.P.H.

Petitioner, Pro Se

1120 Beach Blvd

Biloxi, MS 39530

Email: azad.kabir@ddxrx.net; Tel: (228) 342-6278

Date: **March 13, 2026**

**CERTIFICATE OF SERVICE**

*(Fed. R. App. P. 21; Fed. Cir. R. 21)*

I, **Azad Alamgir Kabir, M.D., M.S.P.H.**, Petitioner proceeding pro se, hereby certify on **March 13, 2026**, that service of the foregoing **Petition for Rehearing En Banc** was made as follows:

**1. Service on the District Court Judge**

Pursuant to Federal Rule of Appellate Procedure 21(a)(1), service on the Honorable Evelyn Padin, United States District Judge for the District of New Jersey, is ordinarily required for notice purposes. In light of D.E. 192, which restricts email communications and references potential sanctions, and given that prior service communications directed to chambers were characterized as ex parte, Petitioner has effected service by Federal Express certified mail addressed to the Clerk's Office of the United States District Court for the District of New Jersey for proper routing and docketing in accordance with applicable procedures.

Petitioner submits this explanation solely to preserve the record and does not intend to waive compliance with Rule 21(a)(1) should the Court direct an alternative method of service.

**2. Service on All Parties to the District Court Proceeding**

Pursuant to Federal Rule of Appellate Procedure 21(a)(1) and Federal Rule of Appellate Procedure 25(c), a copy of the foregoing **Petition for Rehearing En Banc** was served by electronic mail on all counsel of record for the parties in the underlying district court action.

## 3. Method of Service

All service described above, where effected, was completed as follows: service on the Honorable Evelyn Padin was made by Federal Express overnight delivery addressed to the Clerk's Office of the United States District Court for the District of New Jersey for proper routing, and service on all other parties was completed by electronic mail, a permitted method of service under Federal Rule of Appellate Procedure 25(c).

I declare under penalty of perjury that the foregoing is true and correct.

Date: **March 13, 2026**

/s/ **Azad Kabir, M.D., M.S.P.H.**

Azad Kabir, M.D., M.S.P.H.

Petitioner, Pro Se

**CERTIFICATE OF COMPLIANCE**

1. This petition complies with the type-volume limitation of **Fed. R. App. P. 35(b)(2)** or **40(b)** because this petition contains **3826** words, excluding the parts of the petition exempted by **Fed. R. App. P. 32(f)** and **Fed. Cir. R. 32(b)**.

2. This petition complies with the typeface requirements of **Fed. R. App. P. 32(a)(5)** and the type style requirements of **Fed. R. App. P. 32(a)(6)** because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in **14-point Aptos** font.

Date: **March 13, 2026**

/s/ **Azad Kabir, M.D., M.S.P.H.**

Azad Kabir, M.D., M.S.P.H.

Petitioner, Pro Se